**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON**

| | | |
|---|---|---|
| **GRAVITY DIAGNOSTICS, LLC,** | : | Civil Action No.: |
| **Plaintiff,** | : | Judge: |
| -v- | : | |
| | : | **JURY TRIAL DEMANDED** |
| **LABORATORY BILLING SOLUTIONS, INC.** | : | |
| **Defendant.** | : | |

**COMPLAINT FOR DAMAGES AND FOR DECLARATORY JUDGMENT**

Plaintiff Gravity Diagnostics, LLC ("Gravity"), for its Complaint for Damages and for Declaratory Judgment against Defendant Laboratory Billing Solutions, Inc. ("LBS"), pleads as follows:

**The Parties**

1. Gravity is a Delaware limited liability company with its principal place of business located at 632 Russel Street, Covington, Kentucky 41011. Gravity specializes in providing medical diagnostic services to health service providers and others.

2. LBS is a New Hampshire corporation with its principal place of business located at 195 NH Ave., Suite 150, Portsmouth, NH 03801. LBS is a claims service provider that holds itself out as assisting diagnostic labs with billing and other related services.

**Jurisdiction and Venue**

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because it is between citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the parties conduct business in the Eastern District of Kentucky, the contract from which this action arises was negotiated and entered into in the Eastern District of Kentucky, and the actions giving rise to the events set forth in this Complaint took place in the Eastern District of Kentucky.

### The Billing Services Agreement

5. In 2016, Gravity, a medical diagnostics lab, approached LBS about assisting Gravity with billing claims to insurance companies and others to supplement its efforts to obtain payment for the diagnostic services that it has provided to its customers.

6. In September of 2016, Gravity and LBS entered into the Billing Services Agreement (the "Agreement"), pursuant to which LBS was to provide, among other things, certain claims processing services in exchange for a fee as specified in more detail in the Agreement. A true and accurate copy of the Billing Services Agreement is attached as Exhibit A and is hereby incorporated by reference into the Complaint.

7. The Agreement specifies that LBS must perform services "in a timely manner" and required LBS to "perform the [s]ervices in accordance with industry practices," to "ensure that all . . . billing activities are monitored and managed appropriately," and to "provide the resources necessary for the provision" of the services under the Agreement. *See* Agreement at §1.6 & Schedule 1, §§1.1, 2.2, 2.3.

8. The Agreement further required LBS to "ensure that all [of Gravity's] billing activities are monitored and managed appropriately" and that "LBS will . . . provide the resources and automated functionality to identify and minimize errors." *Id.* at §§2.2 & 2.4.

9. The Agreement also states that LBS must "bill managed care accounts, if any, in accordance with the terms of LAB's executed contracts." *Id.* at §§2.4(C).

10. In April of 2020, Gravity and LBS agreed on a Contract Addendum (the "Addendum"), which modified Schedule 2 of the Agreement to alter the manner in which LBS's fees were calculated. The Addendum did not modify any other terms of the Agreement, and those terms remained in full force and effect. A true and accurate copy of the Addendum is attached as Exhibit B and is hereby incorporated by reference into the Complaint.

### LBS's Breaches of the Agreement

11. LBS has failed to comply with the obligations set forth in the Agreement, especially as Gravity's volume of claims has increased over time. This is particularly true in 2020 as Gravity has seen a substantial increase in demand for its services due to the Covid pandemic and the need for related diagnostic services.

12. For instance, in August of 2020, although required to process claims in a "timely manner" and in accord with industry standards, LBS delayed Gravity's claims for almost an entire month, resulting in at least a one-month delay in approximately $1 million or more in collections.

13. Moreover, to date, LBS still has not processed claims that were submitted to it back in October of 2020.

14. LBS also neglected to submit workers' compensation claims in Ohio for nearly a year, resulting in many of these claims being delayed and others being denied as untimely.

15. LBS has submitted claims under improper codes and with improper prices in violation of the requirements set forth in the Agreement.

16. LBS has also failed to notify Gravity in a timely manner of requests received for medical records or other inquiries, resulting in, among other things, denials of claims and rejections of payer applications that otherwise would have resulted in payment to Gravity.

3

17. In addition, LBS failed to comply with the Agreement by billing claims at rates that are not consisted with the terms of Gravity's executed contracts. This has caused overbilling of Gravity's claims, resulting in Gravity having to spend substantial amounts of time and resources to rectify these issues and having to pay back close to $1.4 million. Given that LBS's compensation is determined by a percentage of claims and LBS was paid on the amounts originally collected, this has also resulted in LBS being substantially overpaid on these claims, amounts that Gravity is entitled to recoup.

### Dispute Over Exclusivity

18. In addition to LBS's numerous performance issues, a dispute has also arisen between the parties with respect to the interpretation and application of terms of the Agreement.

19. Although LBS has served as Gravity's exclusive provider for the services set forth in the Agreement, LBS claims that the Agreement goes beyond that and prohibits Gravity from billing any of its own claims in-house during the term of the Agreement.

20. Gravity, on the other hand, claims that the Agreement does not prohibit it from performing billing-related services in-house and only prohibits it from using other third-party vendors for such services.

21. Gravity and LBS have been unable to resolve this dispute such that an existing case and controversy exists.

### COUNT I
### (BREACH OF CONTRACT)

22. Gravity realleges the foregoing paragraphs as if fully restated herein.

23. Gravity and LBS entered into the Agreement, which is a legally valid and enforceable contract.

4

24. The Agreement requires that LBS provide all "services under the agreement . . . in a timely manner," perform the services "in an efficient manner," ensure all "billing activities are monitored and managed appropriately," and provide the "resources necessary for the provision of" services.

25. LBS breached the Agreement by failing to bill claims in a timely manner, by performing services in an inefficient manner, by not monitoring and managing the claims appropriately, and by failing to provide the necessary resources for a provision of services.

26. This is evidenced by, among other things, excessive delays with respect to billing Gravity's claims and delaying providing notice to Gravity of various issues. Examples of these breaches include, but are not limited to,:

   a. The one-month delay in over $1 million in collections that occurred in August of 2020;

   b. The failure to complete claims that were submitted to LBS for billing back in October of 2020;

   c. The failure to submit workers' compensation claims in Ohio for nearly a full year;

   d. The failure to notify Gravity within a timely manner of any requests received for medical records, investigations or other inquiries.

27. Gravity, at all times prior to LBS's breaches, has performed all of its obligations under the Agreement.

28. As a direct and proximate result of LBS's breaches, Gravity has been harmed due to receiving delayed payments and being unable to collect on some claims since they were submitted in an untimely manner. Therefore, LBS is liable for compensatory damages exceeding $75,000 in an amount that will be decided by the trier of fact as well as prejudgment and post-judgment interest.

## COUNT II
### (BREACH OF CONTRACT)

29. Gravity realleges the foregoing paragraphs as if fully restated herein.

30. The Agreement requires LBS to "bill managed care accounts . . . in accordance with the terms of [Gravity's] executed contracts." *See* Agreement at Schedule 1 at 2.4(C).

31. LBS breached this term by billing claims at rates inconsistent with the terms of Gravity's contracts, resulting in the overbilling of claims.

32. This caused Gravity to spend substantial amounts of time and resources to rectify these issues and to pay back close to $1.4 million to its customers/providers.

33. Because LBS's fee is based on a percentage of what is collected and LBS was paid on the overbilled amounts, LBS was overpaid for the claims that it overbilled.

34. As a directly and proximate result of LBS's breaches, Gravity was harmed by overpaying LBS what it was actually due under the Agreement and by having in incur additional costs and resources to resolve LBS's improper billing. Accordingly, LBS is liable for compensatory damages in an amount that the trier of fact will determine as well as prejudgment and post-judgment interest.

## COUNT III
### (BREACH OF CONTRACT)

35. Gravity realleges the foregoing paragraphs as if fully restated herein.

36. The Agreement requires that LBS to perform all services under the Agreement "in accordance with industry practices." *See* Agreement at §1.6.

37. LBS has failed to act in accordance with industry practices by, among other things, excessively delaying the submission of Gravity's claims, failing to devote adequate

resources to make sure that Gravity's claims are submitted in a timely manner and without errors, overbilling claims, and submitting claims with improper information.

38. More specific examples of LBS failing to act in accordance with industry practices include, but are not limited to, the following:

    a. Delaying the submission of approximately $1 million or more in claims in August of 2020;

    b. Failing to complete claims that were submitted to LBS for billing back in October of 2020;

    c. Failing to submit workers' compensation claims in Ohio for nearly a full year;

    d. Failing to notify Gravity within a timely manner of any requests received for medical records, investigations or other inquiries;

    e. Submitting claims with improper codes resulting in delayed or denied payment;

    f. Submitting claims with improper prices, especially those with respect to toxicology claims;

    g. Billing claims in excess of the rates set forth in Gravity's executed contracts;

    h. Failing to establish an automated system to identify and minimize errors and completing front-end eligibility checks that would prevent claim denials for inactive insurance.

39. As a direct and proximate result of LBS's breaches, Gravity has been harmed due to delayed payments and the failure to collect on some claims since they were submitted in an untimely manner. Therefore, LBS is liable for compensatory damages exceeding $75,000 in an amount that will be decided by the trier of fact as well as prejudgment and post-judgment interest.

## COUNT IV
## (BREACH OF CONTRACT)

40. Gravity realleges the foregoing paragraphs as if fully restated herein.

41. The Agreement requires that LBS monitor and manage appropriately all billing activities and "provide the resources and automated functionality to identify and minimize errors." *See* Agreement at Schedule 1, §2.2.

42. LBS breached the Agreement by failing to monitor and manage appropriately its billing activities and by failing to provide the resources and automated functionality to identify and minimize errors with respect to Gravity's claims.

43. Had LBS not breached the Agreement in this manner, the claims that LBS handled for Gravity would not have been excessively delayed, notification of requests and inquiries would have been timely provided, coding and pricing errors would not have been made, and claims would have been billed in accord with Gravity's external contracts.

44. As a direct and proximate result of LBS's breaches, Gravity has been harmed due to delayed payments and the failure to collect on some claims since they were submitted in an untimely manner. Therefore, LBS is liable for compensatory damages exceeding $75,000 in an amount that will be decided by the trier of fact as well as prejudgment and post-judgment interest.

## COUNT V
### (DECLARATORY JUDGMENT)

45. Gravity realleges the foregoing paragraphs as if fully restated herein.

46. A dispute has arisen between the parties with respect to the interpretation and application of terms of the Agreement.

47. Although LBS has served as Gravity's exclusive provider for the services set forth in the Agreement at all times the Agreement has been in effect, LBS claims that the Agreement goes beyond that and prohibits Gravity from doing any of its own billing in-house during the term of the Agreement.

48. Gravity, on the other hand, claims that the Agreement does not prohibit it from performing billing-related services in-house and only prohibits it from using third-party vendors other than LBS for such services.

49. Gravity and LBS have been unable to resolve this dispute such that an existing case and controversy exists as to whether the Agreement requires LBS to perform the billing of all claims and prohibits Gravity from billing any of its claims on its own.

50. Under 28 U.S.C. §2201(a), Gravity is entitled to a declaration of its rights under the Agreement.

51. Accordingly, Gravity is entitled to a declaration that the Agreement does not prohibit it from billing any of its own claims and only prohibits it from using third-party vendors other than LBS for such services.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Gravity Diagnostics, LLC hereby demands judgment as follows:

i. Compensatory damages in an amount in excess of $75,000

ii. A declaration that the Billing Services Agreement does not prohibit Gravity from billing any of its own claims and only prohibits Gravity from using third-party vendors other than LBS for the services set forth in that agreement;

iii. Pre-judgment and post-judgment interest;

iv. All reasonable attorneys' fees, costs, and expenses incurred as a result of this dispute and this lawsuit; and

v. All other relief that this Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Gravity hereby demands a trial by jury of all issues so triable.

Respectfully submitted,

/s/Robert P. Johnson
Robert P. Johnson (86282)
Anthony J. Hornbach (*Pro Hac Vice* Motion to be filed)
THOMPSON HINE LLP
312 Walnut Street, Suite 1400
Cincinnati, Ohio 45202
Telephone: (513) 352-6700
Facsimile: (513) 241-4771
Email:  Rob.Johnson@ThompsonHine.com
Email:  Tony.Hornbach@ThompsonHine.com

*Trial Attorneys for Gravity Diagnostics, LLC*