IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

CIVIL ACTION NO. 2:21-CV-02 (WOB-CJS)

GRAVITY DIAGNOSTICS, LLC                     PLAINTIFF/COUNTER-
                                             DEFENDANT

VS.

LABORATORY BILLING SOLUTIONS, INC.           DEFENDANT/COUNTER-
                                             PLAINTIFF/THIRD-
                                             PARTY PLAINTIFF

VS.

HENRY C. AGENT
THEODORE J. KNAUF                            THIRD-PARTY
                                             DEFENDANTS

MEMORANDUM OPINION AND ORDER

This is a breach of contract case wherein the counterclaimant/third-party plaintiff included allegations of fraud in its amended counterclaim and third-party complaint.

Gravity Diagnostics, LLC ("Gravity") and two of its employees, Henry C. Agent and Theodore J. Knauf, move for partial dismissal of Laboratory Billing Solutions, Inc.'s ("LBS") fraud claims asserted in their amended counterclaim and third-party complaint. (Doc. 31).

The Court has carefully reviewed this matter and concludes that oral argument is unnecessary. The issues being ripe, the Court issues the following Memorandum Opinion and Order.

1

***Factual and Procedural Background***

On September 15, 2016, Gravity and LBS entered into a Billing Services Agreement ("Agreement") for LBS to perform claim processing services for Gravity in exchange for a monthly fee set by the contract. (Doc. 29 at 2, ¶ 1).

This Agreement commenced on November 29, 2016, for an initial term of two years. (*Id.* at 3, ¶¶ 2-3). The Agreement specified that it would automatically renew for an additional one-year term unless Gravity provided thirty days' notice prior to the expiration or as otherwise set forth in Section 3.2. (*Id.*) The Agreement also provided that "LBS will be the sole provider to [Gravity] of all of the Services included on Schedule 1 to this Agreement." (*Id.* at 3, ¶¶ 5-6).

In early 2020, Gravity began billing many of its activities in-house. (*Id.* at 8, ¶ 23). When LBS noticed it was receiving fewer claims, LBS' Director, Thomas Hirsch, contacted Gravity's Director of Business Operations, Knauf, who told him that Gravity was handling many of the claims in-house. (*Id.* at ¶ 25).

Gravity attempted to terminate the Agreement on November 30, 2020, by serving a written notice of termination on LBS, but LBS objected to the request as untimely. (*Id.* at 10, ¶¶ 34-35). Gravity refused to provide LBS with claims at some point, thereafter, citing computer issues. (*Id.* at ¶¶ 35, 42, 46). This caused LBS to

bill much fewer claims than Gravity did in-house. (*Id.* at 12, ¶ 52).

Gravity served LBS with a notice of eleven alleged material breaches of the Agreement on December 23, 2020. (*Id.* at 14, ¶¶ 70-72). The Agreement provided a thirty-day cure period, (Doc. 29-2 at § 3.2), but Gravity filed its original complaint on January 7, 2021, alleging that LBS breached the Agreement and sought declaratory relief that the Agreement does not prohibit it from billing claims in-house. (Doc. 1 at ¶¶ 11, 18-21).

Since then, the parties have engaged in numerous procedural challenges. Of relevance, LBS filed its answer and asserted counterclaims and a third-party complaint on March 22, 2021. (Doc. 21). Gravity and the third-party defendants filed a motion for partial dismissal of the fraud claims. (Doc. 25). LBS responded by filing an amended counterclaim and third-party complaint in response. (Doc. 29).

In the amended counterclaim, LBS asserts: (1) breach of contract; (2) fraud; and (3) fraudulent omission. (Doc. 29 at 15-23). In the amended third-party complaint against Agent and Knauf, LBS asserts one count of fraud. (*Id.* at 37-40). Gravity and the third-party defendants have renewed their motion for partial dismissal of the fraud claims, seeking specifically to dismiss counts two and three of the amended counterclaim and count one of the third-party complaint. (Doc. 31).

### *Standard of Review*

To survive a motion to dismiss, the complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible upon its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). While the Court construes the complaint in favor of the complaining party, the Court need not accept as true legal conclusions or unwarranted factual inferences. *Kardules v. City of Columbus*, 95 F.3d 1335, 1346 (6th Cir. 1996); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

### *Analysis*

The question before the Court is whether LBS may maintain its fraud claims.[1]

Gravity and the third-party defendants argue that LBS cannot maintain their fraud claims because they are based on contractual duties owed and, alternatively, that the economic loss doctrine bars them because LBS is only seeking economic losses arising from Gravity allegedly breaching the Agreement. (Doc. 31 at 15).

Because LBS has not asserted an independent injury from the alleged breach of contract, this Court need not opine on whether the Kentucky Supreme Court would bar LBS's fraud claims under the economic loss doctrine.

---

[1] The parties agree that Kentucky substantive law applies in this matter. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

4

In count one of the counterclaim, LBS asserted a breach of contract claim, averring that Gravity "failed to adhere to the exclusivity provision of the Agreement," failed "to use LBS as the 'sole provider' of the Claim Processing Services," and failed "to send LBS all accessions." (Doc. 29 at 16-17, ¶ 86).

LBS also included fraud claims against Gravity and the third-party defendants, alleging that Gravity and the third-party defendants engaged in a "fraudulent scheme to withhold accessions from LBS in order to avoid paying them fees owed pursuant to the Agreement for services." (*Id.* at 8, ¶ 23).

Gravity relies on *Nami Resources Company, LLC v. Asher Land and Mineral, Ltd.*, 554 S.W.3d 323, 336 (Ky. 2018), to argue that LBS cannot repackage its breach of contract claim as a tort. (Doc. 31 at 12-14).

The plaintiff in *Nami* alleged that the defendant breached its contractual obligations by fraudulently underpaying royalties under a lease agreement. *Nami*, 554 S.W.3d at 328. The plaintiff also alleged fraudulent misrepresentation concerning the factors used to determine the royalties owed. *Id.* The lower court allowed both claims to go to the jury, which awarded the plaintiff $1.3 million in punitive damages. *Id.* One of the questions before the Kentucky Supreme Court was whether this award of punitive damages was permissible. *Id.* at 335.

5

The Kentucky Supreme Court recognized that "punitive damages are not ordinarily recoverable for a breach of contract," and held that the plaintiff "was made whole through its award for unpaid royalties" because the plaintiff did not allege misconduct beyond the defendant breaching its obligations under the contract. *Id.* at 335-36. The court reasoned that:

> Consistent with the foregoing authorities, we reiterate the rule in Kentucky to be that when a plaintiff may obtain complete relief for his contractual losses by means of compensatory damages under a breach of contract claim, even when the breach is motivated by malice and accomplished through fraud, he may not simultaneously recover punitive damages after being made whole on his contractual damages. ***However, a party who has been aggrieved by fraudulent or malicious conduct which results in damages that differ from the damages sustained by reason of the breach of contract, may assert an independent claim for such fraudulent or malicious conduct seeking whatever damages are appropriate for the independent claim***, including punitive damages if otherwise authorized by law.

*Id.* (Emphasis added).

LBS believes it has pled misconduct that is independent of Gravity's breach of the Agreement because: (1) Knauf admitted to LBS that it has been performing in-house billing; (2) Knauf and others at Gravity misled LBS about only being able to send 7,000 accessions a day because of computer issues; and (3) Agent misled LBS about the Explanation of Benefits. (Doc. 34 at 6). This argument is unavailing.

As in *Nami*, these allegations are fundamentally about whether Gravity breached the Agreement. LBS's allegations revolve around

6

the exclusivity provision in the Agreement and the monthly fee owed, like the underpaid royalties in *Nami*. The alleged fraudulent scheme "match[es] up very closely, if not exactly, with the allegations regarding the breach of the contract." *Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 792 (Ky. 2017). "A breach of duty which arises under the provisions of a contract between the parties must be addressed under contract[.]" *Id.* (citing *Town of Alma v. Azco Constr. Inc.*, 10 P.3d 1256, 1262 (Colo. 2000)). LBS has not alleged an independent duty outside the contract. Therefore, LBS's fraud claims must be dismissed.

Thus, having reviewed this matter, and the Court being advised,

**IT IS ORDERED** that Gravity and the third-party defendants' motion to dismiss (Doc. 31) be, and is hereby, **GRANTED**.[2] This matter is hereby set for the Court's docket call on **TUESDAY, SEPTEMBER 14, 2021 AT 1:00 P.M.**

This 20th day of August 2021.



Signed By:
William O. Bertelsman
United States District Judge

---

[2] LBS's third-party complaint against Agent and Knauf, included contemporaneously with its counterclaims, is dismissed with prejudice. (Doc. 29). Therefore, Agent and Knauf shall be terminated as parties. LBS's counterclaim for breach of contract against Gravity shall persist.

7