UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

CIVIL ACTION NO. 2:21CV02 (WOB)

GRAVITY DIAGNOSTICS, LLC                             PLAINTIFF/COUNTER-
                                                     DEFENDANT

VS.                      MEMORANDUM OPINION AND ORDER

LABORATORY BILLING SOLUTIONS,                        DEFENDANT/COUNTER-
INC.                                                 PLAINTIFF

This contractual dispute is currently before the Court on defendant's motion to dismiss Count V of plaintiff's operative complaint (Doc. 46) and plaintiff's motion to dismiss Count I of defendant's amended counterclaim (Doc. 48). The Court has reviewed this matter and concludes that oral argument is unnecessary.

*Factual and Procedural Background*

Defendant Laboratory Billing Solutions, Inc. ("LBS") provides billing services to medical laboratories like plaintiff Gravity Diagnostics, LLC ("Gravity"), processing claims with the laboratories' payors and collecting payments from them. (Doc. 46 at 2).

On September 15, 2016, Gravity and LBS entered into a Billing Services Agreement ("Billing Agreement") for LBS to perform claim processing services for Gravity in exchange for a percentage-based

fee with a monthly minimum. (*See* Doc. 46-6, Billing Agreement, at 2, 14).

This Agreement commenced on November 29, 2016 for an initial term of two years. (*Id.* at 3). The Agreement stated that it would automatically renew for an additional one-year term unless Gravity provided thirty days' notice prior to the expiration of the term or as otherwise set forth in Section 3.2. (*Id.*). While the parties dispute the date that the Billing Agreement terminated, they agree that it is no longer in effect. (Doc. 53).

In pertinent part, the Agreement states:[1]

    1.3  <u>Primary Provider</u>. During the term of this Agreement, LBS will be the sole provider to [Gravity] of all of the Services on Schedule 1 to this Agreement and may perform additional services for [Gravity] at a later date." (*Id.* at 3).

(Doc. 46-6 at 1).  Schedule 1 provides:

    1.4  <u>"Claims Processing"</u> – "Claims Processing" shall mean the complete processing cycle of a lab requisition from in-house demographic order entry (electronic or otherwise) through final resolution.
        . . .

    2.1  <u>Claims Processing Services</u> – LBS will provide [Gravity] claims processing services as identified in Section 1.4 above for [Gravity's] laboratory services.
        . . .

---

[1] The formatting of the headings (i.e., bolding and underlining) has been altered slightly for visual uniformity.

2

    2.4   <u>Claims Processing.</u>

        A.   <u>Processing and Review of Requisitions</u>. LBS will perform patient registration and claims processing of all requisitions received and/or forwarded from [Gravity]. All requisitions will be scanned into an imaging system for storage and QC purposes and will be available for access by [Gravity] staff.

(*Id.* at 9).

When COVID-19 emerged in Spring 2020, Gravity began billing many of its claims in-house. (*See* Doc. 37 at ¶¶ 25). LBS avers that when it noticed it was receiving fewer claims from Gravity, its director, Thomas Hirsch, contacted Gravity's Director of Business Operations, Theodore Knauf, who told Hirsch that Gravity was handling many of the claims in-house. (Doc. 21 at ¶ 25).

Gravity attempted to terminate the Agreement on November 30, 2020 by serving a written notice of termination on LBS, but LBS objected to the request as untimely.[2] (*Id.* at 10, ¶¶ 34-35). Gravity refused to provide LBS with claims at some point thereafter, citing computer issues. (*Id.* at ¶¶ 35, 42, 46). This caused LBS to bill only 148,041 claims for Gravity in 2020 compared to 1,698,071 claims handled in-house by Gravity on COVID-19 tests alone. (*Id.* at 12, ¶ 52). LBS billed claims amounting to

---

[2] Section 3.1 of the Agreement required written notice of termination thirty days prior to the commencement date, which was November 29. Thus, LBS avers that the notice was due on October 30, 2020. (Doc. 29 at 10, ¶ 35).

3

$15,166,385 in total revenue received in 2020. (*Id.* at ¶ 54). Gravity, on the other hand, made a blog post on November 24, 2020, stating that it collected over $87,000,000 in total revenue in 2020. (*Id.* at ¶ 55).

On December 23, 2020, Gravity served LBS with a notice of eleven alleged material breaches of the Billing Agreement. (*Id.* at 14, ¶¶ 70-72). Although the Billing Agreement provided a thirty-day cure period, (Doc. 29-2 at § 3.2), Gravity filed this action on January 7, 2021, alleging that LBS breached the Agreement. (Doc. 1 at ¶ 11). Gravity also requested a declaration that the Billing Agreement does not prohibit it from billing claims in-house. (*Id.* at ¶¶ 18-21).

On March 22, 2021, LBS filed its answer, counterclaims, and a third-party complaint. (Doc. 21). Gravity and the third-party defendants filed a motion for partial dismissal of LBS's fraud claims. (Doc. 25). LBS responded by filing an amended counterclaim and third-party complaint. (Doc. 29). The Court later dismissed two of the three counterclaims, fraud and fraudulent omission, and the two individual defendants, Agent and Knauf. (Doc. 36).

This left Gravity's four claims for breach of contract and one claim for declaratory relief, and LBS's one multifaceted breach of contract claim against Gravity. (Doc. 36 at 7, n. 2). Both parties have now filed Rule 12(c) motions for partial judgment on the pleadings.

4

*Analysis*

**A. <u>Standard of Law</u>**

"The manner of review under [Rule 12(c)] is the same as a review under Rule 12(b)(6); we must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief." *Jelovsek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008) (citations and internal quotations omitted).

**B. <u>LBS's Motion for Judgment on the Pleadings</u>**

LBS moves under Rule 12(c) to dismiss Gravity's Count V, a claim for declaratory judgment.

However, as the parties have now informed the Court, the Billing Agreement has been terminated. (Doc. 53). Declaratory actions generally provide a *prospective* remedy, anticipating and avoiding an impending or likely future breach of a legal right, such as rights secured by contract. *See* 10B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2751 (4th ed. 2022). Thus, because the contract in question is no longer in force, Count V is moot and must be dismissed on that basis. *See Rice v. Vill. of Johnstown, Ohio*, 30 F.4th 584, 594 (6th Cir. 2022) (noting that mootness is a jurisdictional question).

C. **Gravity's Motion for Judgment on the Pleadings**

Gravity's Rule 12(c) motion is based on a narrow issue of contract interpretation concerning the Billing Agreement's "exclusivity provision." LBS argues that under that provision, Gravity could not process *any* of its billing in-house because LBS was Gravity's "sole provider" of billing services. Gravity argues instead that LBS can be Gravity's sole third-party provider while Gravity still processes some or all of its billing in-house.

Because this case is before the Court on diversity jurisdiction, the Court applies Kentucky contract law. *Richmond Health Facilities v. Nichols*, 811 F.3d 192, 196 (6th Cir. 2016). The construction and interpretation of contracts, including questions regarding ambiguity, are questions of law to be decided by the Court. *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 105 (Ky. 2003).

The Court first must determine if an ambiguity is present. *See id.* at 105-06. In the absence of ambiguity, a written instrument will be enforced strictly according to its terms, and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence. *Id.* (citing *O'Bryan v. Massey-Ferguson, Inc.*, 413 S.W.2d 891, 893 (Ky. 1966); *Hoheimer v. Hoheimer*, 30 S.W.3d 176, 178 (Ky. 2000)).

The parties argue, and the Court agrees, that the language of the Billing Agreement is plain and unambiguous. Thus, the Court is

guided in its interpretation by the ordinary meaning of the language used in the contract. *Frear*, at 106 (citing *Hoheimer v. Hoheimer*, 30 S.W.3d 176, 178 (Ky. 2000)).

The exclusivity provision states:

> During the term of this Agreement, LBS will be the sole provider to [Gravity] of all of the Services on Schedule 1 necessary to this Agreement and may perform additional services for [Gravity] at a later date.

(Doc. 46-6 at 1).

LBS emphasizes the words *sole* and *all* to argue that LBS was required to process each and every claim for billing that Gravity had. LBS contends this language clearly prohibits Gravity from processing its own claims.

By contrast, Gravity emphasizes the word *provider*, arguing that the word implies a service relationship between Gravity and another entity separate from itself. Under this interpretation, Section 1.3 does not prohibit Gravity from processing some of its own claims for billing. Rather, Gravity would be precluded only from utilizing a third-party other than LBS for such billing services.

Gravity's proposed interpretation comports with the plain language of the contract. In the absence of a clear directive that Gravity was prohibited from doing any of its own billing work, and no express requirement that it send every single claim for

7

billing to LBS, Gravity is not a "provider" as that word is used in Section 1.3.

Merriam-Webster defines "provider" as "one that provides." "Provider" *Merriam Webster.com Dictionary*, https://www.merriam-webster.com/dictionary/provider (last accessed Aug. 5, 2022). "Provide" has multiple meanings, among which is "to supply or make available (something wanted or needed)," "to make something available." "Provide" *Merriam Webster.com Dictionary*, https://www.merriam-webster.com/dictionary/provide (last accessed Aug. 5, 2022). Synonyms of "provide" include "deliver," "feed," "furnish," "give," "hand," "hand over," and "supply," all words that describe something one party does for another, not something one does for oneself. *Id.* And the example sentences illustrate how the word is used to describe a transaction or transfer from one party to another. *Id.*[3]

---

[3] The examples include:

"The website provides information about local activities."
"The curtains on the windows provide privacy."
"The school provided new uniforms for the band."
"The goal is to provide health care to as many people as possible."
"Coffee and doughnuts will be provided at the meeting."
"The website provides users with information about local activities."
"The school provided the band with new uniforms."
"The store provides its customers with excellent service."
"Workers were provided with gloves for protection."

Each example involves one party or thing providing something to *another*, *a separate* party or thing.

8

These definitions reflect a natural use of the word "provider," i.e., a relationship between separate entities. The words LBS emphasizes, "sole" and "all," thus do not change what it means to be a "provider," understood in its ordinary sense.

Therefore, because Gravity was not "providing" billing services to itself when it processed some of its own claims, Gravity did not violate the exclusivity provision.[4]

The Court thus finds it proper to dismiss the portion of LBS's counterclaim that rests on this theory.

Therefore, having review this matter, and the Court being advised,

**IT IS ORDERED** that:

(1) Count V of plaintiff's Second Amended Complaint be, and is hereby, **DISMISSED AS MOOT,** and defendant's motion to

---

[4] Gravity committed to pay at least monthly minimum fees to have LBS available to provide billing services, and would also, in some circumstances, have to pay LBS above the minimum depending on the volume of claims LBS billed. Gravity promised exclusivity and a minimum monthly fee to LBS, and LBS promised it would be at the ready to process the claims Gravity brought to it. There is no lack of consideration between the parties.

Further, the issues of waiver, parol evidence, and implied amendment are either mooted or rendered improper for consideration in the absence of contractual ambiguity. *See* Frear, 103 S.W.3d at 105.

9

dismiss that claim (Doc. 46) be, and is hereby, **DENIED AS MOOT**;

(2) Plaintiff's motion for judgment on the pleadings (Doc. 48) be, and is hereby, **GRANTED** in accord with this Memorandum Opinion.

This 17th day of August 2022.



Signed By:
*William O. Bertelsman* WOB
United States District Judge